UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

SAFEWAY TRANSPORTATION, CO.
                Plaintiff,                              Case No.    -PZ

vs.

ROBERT C. BOBB, Emergency Financial
Manager for Detroit Public Schools,
TERRY BURGESS, LEON GLASTER,
FIRST STUDENT INC. and DETROIT
PUBLIC SCHOOLS
                Defendant
_____/

**VERIFIED COMPLAINT AND JURY DEMAND**

NOW COMES the Plaintiff, SAFEWAY TRANSPORTATION, CO, by and through its attorney, Ernest L. Jarrett and for good cause states as follows:

**PARTIES, JURISDICTION, and VENUE**

1. Plaintiff, SAFEWAY TRANSPORTATION CO. ("Safeway") is a Michigan corporation doing business in Detroit, Michigan.

2. Defendant, ROBERT C. BOBB, is the Emergency Financial Manager for the Detroit Public Schools District, appointed by the Governor of the State of Michigan pursuant to MCL 141.1201 et seq. As such he is temporarily empowered to exercise exclusive control over all fiscal maters and to make all fiscal related decisions for the school district during the term of his appointment or until he is removed by the Governor.

3. Defendants, TERRY BURGESS and LEON GLASTER are consultants brought into the Detroit Public School District by the emergency financial manager ("EFM") to serve as a member of his team during the period of his appointment as the Chief Financial Officer respectively.

1

4. Defendant, First Student, Inc. ("First Student") on information and belief, is an Ohio Corporation which provides student transportation services in various school districts throughout the United States.

5. Defendant, DETROIT PUBLIC SCHOOLS is the school district which provides public education to school children residing in the City of Detroit. The district exists by virtue of the laws of the State of Michigan,

6. This is an action for declaratory and injunctive relief as well as for damages and such other relief as may be available.

7. This action is brought pursuant to the Sherman Anti-Trust Act, 15 U.S.C. § 1,2, et seq to prevent and/or redress violations of the anti-trust and/or anti-monopoly provisions of the Act.

8. This action is also brought pursuant to 42 USC § 1983 to prevent and/or redress constitutional deprivations by persons acting under color of state law.

9. Plaintiff seeks relief under the equitable authority of this Honorable Court.

10. The amount in controversy exceeds $50,000.00.

11. This matter is otherwise properly before this Honorable Court.

## STATEMENT OF FACTS

12. Safeway is a school bus company which has provided student transportation services to DPS since 1975 pursuant to annually renewed contracts. It has done so with the expressed and/or implied understanding that it would continue to provide such services as ling as it did so in a competent, safe and reliable manner and as long as the parties could agree upon the rate for such services. Over the past 35 years, Safeway has

performed its duties in a safe, diligent, reliable and exemplary manner. DPS is Safeway's primary client.

13. In January, 2009, the Michigan Department of Education declared the existence of a financial emergency in DPS and recommended the appointment of an emergency financial manger to address the crisis and to restore financial stability at DPS. Accordingly, the Governor appointed the defendant Bobb as the EFM for DPS pursuant to MCL 141.1201. Defendant Bobb accepted the appointment and assumed his responsibilities pursuant to a one year contract, on or about March 2, 2009. Defendant Bobb assembled a team to assist him in this undertaking, which included defendants Burgess and Glaster.

14. Since assuming his duties pursuant to his appointment, defendant Bobb, as well as defendants Burgess and Glaster have requested the loyalty patience and sacrifice of all of its vendors, including its transportation vendors with respect to payment for goods and services provided to DPS. They have expressly and/or impliedly promised that the requested loyalty, patience and sacrifice would not be forgotten and would eventually be rewarded once financial stability is restored at DPS. Accordingly, Safeway continued to provide transportation services to DPS schoolchildren as it has over the past 35 years, despite frequent, repeated and prolonged delays in payments for its services and despite other recurrent breaches of promises by DPS.

15. Immediately after his appointment, defendant Bobb, and his team, began their review of all DPS operations with a view towards maximizing efficiency and cutting costs. Accordingly, defendant Burgess sought input from Safeway and other transportation vendors relative to their perceptions of problems and/or inefficiencies in

the operation of the DPS student transportation system, together with their recommendations regarding how to improve the system and/or to control costs.

16. Prior to defendant Burgess' inquiry, all decisions with respect to the determination of transportation routes, route assignments, scheduling and other systemic decisions were made by DPS personnel, with little or no input from the transportation vendors. The vendors simply operated the routes assigned to them, on the schedule determined by DPS. The system was operated by a division of routes between in-house DPS bus drivers and routes driven by DPS vendors, including Safeway. In response to Burgess' inquiry, Safeway identified a number of areas in which it believed improvements could be made an costs could be reduced and further made recommendations as to how best to accomplish those objectives.

17. On or about April 16, 2009, defendant Bobb, acting on behalf of DPS, entered into a consulting contract with First Student, purportedly to perform a comprehensive audit of the DPS student transportation system and to make recommendations as to how to improve efficiency, while cutting costs. During the audit First Student was allowed unprecedented access to all aspects of the DPS student transportation system and to make recommendations as to how to improve efficiency, while cutting costs. During the audit First Student was allowed unprecedented access to all aspects of the DPS student transportation system. First Student reviewed records and data, inspected facilities, equipment and buses, and interviewed DPS personnel, all purportedly as part of its comprehensive audit. Neither Safeway, nor any other existing vendor had previously been allowed such access to the DPS operations, nor were they allowed to participate during First Student audit.

4

18. On information and belief, Plaintiff states that prior to the April 16, 2009 consulting agreement between DPS and First Student, defendant Burgess had a prior relationship with First Student and had been instrumental in assisting First Student in securing contracts to provide student transportation services in other school districts. Plaintiff states further on information and belief that defendant Burgess was instrumental in the decision to retain First Student to perform the aforementioned audit at DPS.

19. In June, 2009, Safeway filed suit in the Wayne County Circuit Court seeking specific performance of an agreement to cure the breach of a 2006 settlement agreement reached in connection with a suit brought by Safeway against DPS in 2005. The underlying settlement agreement called for a three year contract extension in favor of Safeway, with Safeway being insured the assignment of a guaranteed number of routes and being paid at a premium rate based upon a predetermined formula for those routes over the period of the contract extension. In 2007, DPS breached the underlying settlement agreement. In 2009, DPS agreed to cure the breach in part by the payment of the difference between what Safeway would have been paid had the settlement agreement not been breached and the amount it was actually paid, and in part by the continuation of the contract extension. DPS began its payment of specified installments prior to the appointment of defendant Bobb as the EFM. When the March, 2009 installment became due, Safeway was persuaded by defendant Glaster to defer a portion of the amount due at that time for approximately 40 days, after which time Glaster promised to pay at least the balance and to also attempt to accelerate the remaining installments, while permitting Safeway to perform under the remainder of the contract extension beginning in the fall of 2009 agreed between the parties. In May, 2009, however, defendant Glaster and DPS

failed, neglected and refused to pay the balance of the March installment as promised. Accordingly, Safeway filed suit the following month. At the filing of this action, the Wayne County suit continues in its pendancy. Safeway has not been permitted to perform in conformity with the 2006 and 2009 agreements. This dispute between the parties has not, however, affected Safeway's performance of its duties during the current school year.

20. First student conducted its audit over a period of five months, after which time it issued its "analysis" and recommendations to DPS in the form of a report, of approximately 100 pages in length. Incorporated in the report were the analysis and recommendations offered by Safeway, which could only have been communicated to First Student by defendant Burgess. First Student presented the analysis and recommendations previously offered by Safeway in its report as if it was its own work product. The report focused upon scheduling, routing, inaccurate student information, vehicle maintenance and other systemic matters as being the areas of greatest inefficiency. Few, if any, criticisms were made of any of the transportation vendors, which previously had no input in the design or management of the system. However, although it was totally irrelevant to any of the issues First Student was charged with the responsibility of "analyzing", First Student prominently and gratuitously set forth in its report that fact that Safeway was involved in litigation with DPS. The reference litigation has no bearing on Safeway's past performance, nor its ability to perform in the future.

21. Among the recommendations in the First Student report was that DPS discontinue its in-house student transportation services, and that routes previously serviced by DPS be out-sourced to private contractors. Accordingly, a Request for Proposal (hereafter "RFP") was issued by DPS inviting competitive bids for the routes

previously serviced by DPS. On information and belief, Plaintiff states that the RFP was drafted, in whole or substantial part, by First Student, including the criteria by which bidders would be evaluated.

22. The concept of privatizing the in-house DPS transportation services was not originated by the First Student report. Prior to the appointment of defendant Bobb, representatives of DPS, Safeway and another Detroit based transportation vendor had begun discussions about the possibility of dismantling the in-house transportation system and awarding the two vendors the contract to service all routes in the DPS system. These discussions were interrupted by the appointment of defendant Bobb and the retention of First Student to perform its "audit".

23. Following the issuance of the RFP, defendant Burgess met with representatives of the three existing transportation vendors, advising that their bids for the in-house DPS serviced routes would be evaluated in substantial part on how adaptable they were to the revised DPS operational plan. However, the revised DPS operational plan was in fact merely the adoption of the First Student post-audit report. Burgess refused to provide copies of the First Student report to the vendors who were expected to bid on the routes.

24. The vendors, including Safeway protested that they could not possibly submit bids which addressed the analysis and recommendations made by First Student, without the benefit of the First Student report. Safeway protested further about the possibility that First Student would be permitted to bid under the RFP while enjoying the substantial and unfair advantage of having performed a five month audit of every aspect of the DPS

transportation system thereby having considerable and essential information which the vendors did not have.

25. In response to these protests, defendant Burgess continued his refusal to provide the vendors with copies of the report, but stated that each would be given an opportunity to "review" it before bid submission. Burgess also stated that First Student had been retained exclusively to perform its audit and to prepare its report and recommendations, and that it would not be permitted to bid on the DPS routes. Unbeknownst to Safeway at that time, however, was the fact that Burgess' representations were directly contrary to the language of the consulting agreement which expressly allowed First Student to submit bids for any transportation contract offered by DPS. Based upon Burgess' misrepresentations, Safeway prepared to participate in the RFP process, having been misinformed that all bidders would be on equal footing with respect to the report and/or the information gathered during the audit.

26. Following the aforementioned meetings with the existing vendors, Burgess allowed representatives from each company to "review" the First Student report. However, each review was limited to only 30 minutes and none of the representatives were permitted to take notes during their allotted time. Burgess offered no explanation for this procedure, and declined to respond to question about why it was being imposed.

27. Bids were submitted by each of the three existing transportation vendors. Safeway later learned that contrary to defendant Burgess' representations, First Student also submitted a bid.

28. First Student was permitted to bid notwithstanding Burgess' previous

8

representation to the contrary and despite its unfair and substantial advantage of having 1) unprecedented access to all DPS transportation records, documents, offices, facilities and to DPS personnel by virtue of its audit; 2) unfettered access to its own report and all of the documents, collected data, records and observations from which the report was complied; and 3) drafted the RFP and establishing the criteria by which bids would be evaluated. Safeway's renewed protests about the unfair advantage given to First Student were ignored by Burgess and other DPS representatives.

29. Bids were to have been evaluated by a committee comprised of:

    a) DPS employee Kevin White

    b) DPS employee James Minock

    c) DPS employee Mark Schrupp

    d) Defendant Leon Glaster

    e) Defendant Terry Burgess

Without explanation, defendant Burgess advised that he would not be a voting member of the committee. However, before the committee evaluated any of the bids, defendants decided to put all routes up for competitive bidding, rather than to limit the award to the routes previously serviced in-house by DPS. Accordingly, a second RFP was issued. The second RFP was essentially the same as the first, except that it encompassed all DPS student transportation routes, rather than only those previously serviced in-house by DPS.

30. Although he bids submitted under the first RFP were said to be under lock and key on information and belief, Plaintiff states that the bids were in fact revealed to one or more of Safeway's competitors. Moreover, Plaintiff believes that First

Student was at least one of the recipients of the information from the improperly revealed bids, thereby giving it an additional unfair advantage with respect to the second RFP.

31. New bids were then submitted by Safeway, First Student and the two other transportation vendors.

32. Without explanation, the committee of five described above, who were to have evaluated the bids was inexplicably disbanded and all DPS employed members were excluded from evaluation of the bids. This left EFM team members, defendants Burgess and Glaster as the only persons evaluating the bids.

33. No date, time, place or procedure for the opening of bids was established in the RFP or otherwise by DPS, however on information and belief Plaintiff states that the bids were secretly opened after which defendants Burgess and Glaster, with the knowledge and consent of defendant Bobb, secretly, improperly and/or unlawfully coached First Student as to how its bid should be modified. Thereafter, First Student is believed by the Plaintiff, to have been permitted to submit a modified bid.

34. Plaintiff states, on information and belief that following the submission of the modified bid by First Student, defendant Bob decided and was prepared to announce the award of a contract for 100% of all DPS routes to First Student. The announcement was withheld, however, in anticipation of the probable public outrage which would have resulted over the fact that the award would be made to an out-of- state company, having no minority ownership, over the Detroit based, minority owned companies. Whereupon, defendants Burgess and Glaster

contacted the owner of ABC Student Transportation and coached him as to how his bid should also be modified. Said representative was permitted to modify and resubmit his bid, in an unfair, improper and/or unlawful manner. Thereafter, Defendant Bobb announced the award of contracts to First Student and ABC. First Student was awarded 75% of the routes and ABC was awarded 25%. However, under the award, ABC is obligated to report to First Student, to operate under its supervision and pursuant to its rules and procedures. Consequently, ABC is in every respect a *de facto* subcontractor of First Student, and its late addition as a contract awardee was intended solely to mollify members of the public, to deflect attention away from the unfair advantages given to First Student, and to deflect attention away from the exclusion of Safeway in the award.

35. Under the RFP, which had been drafted in whole or substantial part by First Student, the following weighted elements were established as the criteria by wich bids were to be evaluated:

   1. Pricing                        40%
   2. Experience of Firm             20%
   3. Expertise of Firms Personnel   20%
   4. DPS Operational Plan           20%

35. The RFP, drafted in whole or in part by the First Student, was by design intended to skew the bid process in a manner which improperly, unlawfully, unfairly and/or unduly favored First Student.

36. Although "pricing" is ostensibly an objective element, determination of a pricing structure is a function which depends upon a knowledge of all

11

requirements of the DPS operational plan. That operational plan was created by First Student resultant from its five month long audit and the report and recommendation which it issued to DP as a result. Safeway had no similar access to the DPS transportation system and was permitted to review the First Student report for only 30 minutes, without being able to take notes during this time limited review. Consequently, Safeway (and other bidders) were required to submit a pricing structure without having meaningful knowledge of all of the elements to take into account in the preparation of their respective pricing structures.

37. Additionally, elements such as "Experience of Firm" and "Expertise of Firms Personnel" are clearly subjective criteria, susceptible to subjective interpretation and manipulation. Plaintiff submits that with 35 years of service to DPS, Safeway's " experience" in this regard substantially exceeds any other bidder, particularly the "experience" of First Student which had no prior relationship with DPS. However, as "Experience of Firm" is not limited to experience with DPS, and is otherwise vague in its description, it represents an element which is entirely susceptible to the subjective interpretation and manipulation by the defendant(s). Defendants Burgess and Glaster were exclusively responsible for making these subjective evaluations, and by Defendant Burgess' history with First Student, and the inexplicable and unfair bid procedures which he established, he clearly was biased in favor of First Student, *ab initio.*

38. The fourth element set forth for evaluation, "DPS Operational Plan", is also ambiguous. However, to the extent that the element means that a bid would be

evaluated by how consistent or compatible it is with the revised DPS operational plan, First Student obviously enjoyed an overwhelmingly unfair advantage by virtue of the fact that it designed the revised DPS operational plan, while that plan was essentially concealed and/or withheld from Safeway.

39. In addition to the fact that the criteria for evaluation, as established by First Student and therefore was unfairly skewed to favor First Student, relevant and material elements were not included as criteria for evaluation and therefore were not considered at all. For example, Safeway enjoys an outstanding service record with DPS. By contrast, First Student has no service record with DPS, but has a well established controversial, suspect and troublesome service records in several other school districts which is replete with documented violations of the law and/or contracts and presented numerous other problems which are relevant to its suitability to provide services to DPS, which on information and belief Plaintiff states includes but is no limited to:

    a) In December, 2009, a First Student bus driver, assigned to the Chicago School District was criminally charged with sexually assaulting a 14 year old, female, junior high school student.

    b) The First Student driver charged with the sexual assault described in sub-paragraph (a) had been fired from his prior bus driver job in 2004 in Joliet Township, Illinois because of multiple complaints that he had sexually harassed female students there.

c)  A second First Student bus driver was arrested for exposing Himself to a girl in Chicago, in 2009.

d)  A third First Student bus driver assigned to the Chicago School District was arrested for being in possession of child pornography.

e)  A fourth First Student bus driver assigned to the Chicago School District was arrested for child endangerment and DUI after losing control of his bus on the Edens Expressway in Chicago in 2009.

f)  A fifth First Student bus driver was shot and killed by police in Riverdale, Illinois after leading them on a high speed chase.

g)  First Student was cited for employing unlicensed drivers In Duval County, Florida.

h)  First Student had the highest accident rate amongst all Contracted bus companies in Duval County, Florida during the school year 2004-2005.

i)  First Student's former contract manager was charged by the Marion County, Indiana prosecutor with two counts of failure to properly maintain school buses, in connection with the First Student operations in Indianapolis, Indiana.

j)  More than 25% of 149 buses operated by First Student in the Indianapolis School District were ordered out of service by the Indiana State Police Department during inspections conducted on June 16 and 17, 2009.

      k) In 2007, First Student was placed on a two year probation by the Ohio Public Safety Department for its failure to perform background checks of its drivers as required by Ohio law.

      l) In 2009 the Ohio Public Safety Department initiated proceedings for First Student's violation of its 2007 probation.

      m) In October, 2007, First Student was so severely understaffed in Buffalo, New York, that students were left waiting for buses more than 45 minutes later than their scheduled pick-up times.

These and other instances of violations of the law and contracts and/or other poor services performance issues on the part of First Student were not considered by the defendants herein because of their predisposition to award the DPS contract to First Student, and because disclosure of its history was not required by the RFP which First Student drafted.

41. Safeway was also wrongfully excluded from meaningful consideration for the award of the contract by the defendants in retaliation for filing suit against DPS, in a wholly unrelated matter.

42. The term of the contract awarded is for five years, renewable for an additional five years without resubmission to a bid process. Consequently, First Student will provide transportation services covering most of DPS transportation routes without competition for as many as 10 years. Moreover, given the manner in which ABC must

answer to First Student, the mechanism for termination of its contract, to be assumed by First Student is embedded in the arrangement as awarded.

43. The entire RFP process, beginning with the "audit" performed by First Student, was a sham, to lend the appearance of fairness when in fact the true intent was to steer the contract work, in whole or substantial part, to First Student, and to provide plausible cover for the total exclusion of Safeway in retaliation for its exercise of its legal rights by filing suit against DPS.

44. The improper, manipulative, fundamentally unfair and/or unlawful bid process was contrary to the very purpose of such a process in the award of a public contract, and served no legitimate purpose in the stated objectives of DPS, all of which could have been accomplished within the well established understandings between DPS and its transportation vendors, and/or by employing a legitimate, fairly run bid process.

45. The contract awarded to First Student is for a period of five years, renewable for an additional five years without resubmission to a bid process.

46. Safeway will suffer irreparable injury unless this Honorable Court intervenes by granting the immediate and ultimate forms of relief sought herein, including but not limited to the following:

    a) Loss of standing with creditors, including acceleration of existing lines of credit.

    b) Loss of employees to contract awardees.

    c) Loss of standing within industry and within the community, thereby adversely impacting its ability to maintain or establish new business relationships.

    d) Loss of expectation of continued business with DPS.

    e) Inability to continue business viability.

## FIRST CAUSE OF ACTION

47. Paragraphs 1-44 are realleged and incorporated by reference as if fully set forth herein.

48. The defendants combined, conspired, and contracted in restraint of trade and/or commerce as defined by 15 USC§ 1 and actionable pursuant to 15 USC§15.

## SECOND CAUSE OF ACTION

49. Paragraphs 1-44 are realleged and incorporated by reference as if fully set for the herein.

50. Defendants combined and conspired to allow a monopoly by First Student of all DPS student transportation business. The late addition of ABC Student Transportation as a contract awardee was intended exclusively to blunt public outrage anticipated in response to the elimination of all Detroit based, minority owned transportation providers, and to eliminate the appearance of the monopoly. However, the addition of ABC is purely pretextual as it was not awarded an independent contract, but rather must work under the supervision of and in compliance with the rules and procedures established by First Student, and is subject to termination or removal by its failure to so comply, leaving its relatively small portion of DPS routes to eventually be operated by First Student. Said conspiracy and predetermined circumstances for First Student's eventual monopoly of all DPS student transportation business violates 15 USC§2, and is actionable pursuant to 15 USC§15.

### THIRD CAUSE OF ACTION

51. Paragraphs 1-44 are realleged and incorporated by reference as if fully set forth herein.

52. Defendants acting individually and/or in concert deprived Safeway of its property rights without due process while acting under color of state law in violation of rights protected by the Fifth and/or Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 USC§1983.

### FOURTH CAUSE OF ACTION

53. Paragraphs 1-44 are realleged and incorporated by reference as if fully set forth herein.

54. Defendants, acting individually and/or in concert deprived Safeway of its liberty rights, while acting under color of state law, in violation of the Fifth and/or Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 USC§1983.

### FIFTH CAUSE OF ACTION

55. Paragraphs 1-44 are realleged and incorporated by reference as if fully set forth herein.

56. Defendants, except First Student, excluded Safeway from meaningful consideration as a prospective contract awardee in retaliation for Safeway's suit against DPS, and/or in an effort to impair Safeway's rights as a litigant while acting under color of state law in violation of rights protected by the First, Fifth, Seventh and/or Fourteenth Amendments of the United States Constitution and actionable pursuant to 42 USC§1983.

## SIXTH CAUSE OF ACTION

57. Paragraphs 1-44 are realleged and incorporated by reference as if fully set forth herein.

58. Defendants created a sham bid process, intended to exclude Safeway from meaningful consideration as a contract awardee, and/or in retaliation for Safeway's suit against DPS, rendering the award by such improper conduct a nullity under the Constitution and/or laws of the State of Michigan.

## RELIEF SOUGHT

WHEREFORE Safeway prays for the following relief, cumulatively, or in the alternative:

    a) Entry of a temporary restraining order and/or preliminary injunction, which maintains the status quo and preserves the evidence throughout the pendancy of this action set forth in greater detail in Safeway's ex-parte motion filed contemporaneously herewith;

    b) Declare the RFP/Bid process and the resultant contract awards a nullity;

    c) Prelude the execution of contracts in conformity with the award and/or nullify any contracts already executed as a result of the award.

    d) Enter an injunction requiring a rebidding process pursuant to a revised RFP and conducted under the supervision of the court or its designee.

e) Preclude First Student from participating in a rebidding process.

f) Preclude defendants Bobb, Burgess and/or Glaster from participation in the evaluation of bids in the rebidding process.

g) Award the contract(s) by negotiations rather than by bid process with existing transportation vendors.

h) Safeway be awarded treble damages as provided by law.

i) Safeway be awarded damages as provided by law.

j) Punitive and/or exemplary damages.

k) Costs

l) Interest

m) Attorney Fees

Respectfully submitted,

/s/
Ernest L. Jarrett (P29770)
Attorney for Plaintiff
65 Cadillac Square Ste 2100
Detroit, MI  48226
313-964-2002

Dated: March 15, 2010